At its essence, this appeal has to do with construction of Bankruptcy Code Section 506B. 506B is the Bankruptcy Code Section by which secured creditors, if they are oversecured, may apply to the court for both fees and interest. The importance of this appeal, although the dollar amounts are not large, cannot be overstated. The State of Montana is an income tax state. Almost every bankruptcy that is filed in Montana, the Montana Department of Revenue has a claim in. Of those claims, a significant amount of those are secured tax claims. The Bankruptcy Code was amended in 2005 to finally add a provision in 506B that allowed attorney's fees to be obtained if the attorney's fees are eligible under statute. That it was a result of the State's lobbying the efforts to get the tax, the secured tax claims to be paid. Are you concerned, just can we get to the, cut to the chase here? Yes. Your argument seems to be predicated on reading the order of the Bankruptcy Industry Court as a per se rule. Yes, sir. If it's not a per se rule, does that take care of your concerns, even if you're disappointed in this case? If it is not a per se rule, the opinion can't be read, though. The industry court read it that way. It's not a per se rule. So if all you're concerned about is that it not be a per se rule, that's what you're looking for. To an extent, yes. What we do not want, what the Montana Department of Revenue does not want, is the fact that you have an extra judicially imposed requirement under 506B. Something that this judge, this trial judge, who's the only judge in Montana, imposed upon this case. And the fact that you can impose it upon this case and extrapolate it out to every other case, that's what makes this issue so important. So you want to be able to hire as many lawyers or claim as many lawyers as you think you need without a reasonableness review? No, sir, Your Honor. And that's what's the key part here. The reasonableness requirement is in the statute. It is acknowledged that it's in the statute. Congress put it in the statute. We must abide by it. Here, though, the court uses terms inherently unreasonable. That effectively imposes an objective requirement into the statute and takes away the case-by-case analysis that's required. In this case, that's exactly what the court did. This case is very similar to the Ninth Circuit bankruptcy appellate panel case in Ray Markey Associates. In that the court in Duncan effectively says that because you got paid in full because you were so oversecured, you shouldn't get any fees. Could you point me to the language inherently unreasonable? Because if that language standing alone really means inherently unreasonable, I might be sympathetic to your claim, but I want to see where that language is. Yes, Your Honor.  Absolutely. Well, what are we reviewing, the bankruptcy court or the district court? You're reviewing the bankruptcy court's order. So point me to where it says in the bankruptcy court order. Yes, sir, Your Honor. The ‑‑ if you look at page 12 of the memorandum opinion, the last sentence, the last paragraph, before the section called conclusions of law, the file court says, In the absence of any objection or challenge to the Department of Revenue's secured status, this Court cannot escape the conclusion that the $13,447 in fees requested for Butler, Mr. Butler, myself, in the DOR's application is, quote, inherently unreasonable on the authority quoted in Hungerford, which is one of the file court's own decisions. The inherently unreasonable is a bright line standard. It is an objective requirement that is either met or not met, like the other requirements of 506B. The fact that my claim has not been objected to is irrelevant to whether I can obtain fees under the bankruptcy code if I'm oversecured. That's Ninth Circuit law. By imposing an objection to claim requirement on a creditor, what you do in a very real sense is you allow the debtor attorney to block out secured creditor type of fees as Congress has given it. In a bankruptcy context, you don't only have claim objections. You have financing fights. You have plans of reorganization. You have equitable subordination claims. You have a myriad amount of litigation that can be things other than claim objections. Yeah, but, you know, the inherently unreasonable language, yes, it was quoted in Hungerford, but it comes out of the bankruptcy court in New York. And the sentence in which inherently unreasonable appears in the bankruptcy court's opinion has some qualifiers. The bankruptcy court writes, in the absence of any objection or challenge to the DOR's secured status, this court cannot escape the conclusion that the $13,000, it doesn't say fees period, but the $13,000 at issue in this case as requested by Butler in the application is inherently unreasonable. That is not even that sentence. I understand why you're unhappy with it. Yes, sir. But that does not strike me as a per se rule. It does from this standpoint. If the amount of work is considered excessive by a judge, then the reduction in the – if it was not a per se rule, then only reasonable fees would have been awarded, as the judge did to other secured creditors in the case. By saying that you haven't been objected to, which in bankruptcy is a specific code section under 502, a claim objection, by saying that's the sole requirement before you're eligible and then disallowing all fees, that results in a per se rule. You either have the fact – the fact criterion is met or not, so you either get it or not. Same thing in 506B. If I was undersecured, that fact criterion, if not met, I lose the ability to get fees. But that's a fact criterion or qualification that Congress put in the statute and not a judicially made coercion. I don't read the – in context, you're isolating out one portion of the opinion, but like the district court, you read through there. I agree there's some language that you're picking on, but it's considering all the circumstances and discretion must be exercised. I mean, why is he exercising discretion if it's a per se rule? Because the court – the trial court, the bankruptcy court, I apologize. The bankruptcy court is clear in its memorandum of opinion, both at the beginning and the end of the opinion, that the reason it's denying all fees is that the claim was – Well, he did not deny all fees, counsel. You didn't put in for the fees of your salaried people. He's talking about $13,000 for a bankruptcy specialist. Exactly. He did not deny all fees. Well, actually he did, Your Honor. Only ones you put in for. Yes, sir, Your Honor. It was an individual. Factually, it was a single attorney. You didn't put in for fees for your own department. No, we did not. Okay. We put in for partial fees, which makes the argument that, oh, they overworked the case even that much more absurd. If we had put in all fees for everyone involved – Well, you said you denied all fees, and I think you're being – you know, in this case, that's a term of art. Because all fees happen to be what you applied for. Yes, sir, but that is the only application that was before the court. I understand that. I understand that, but that's also the limitation of the opinion, too, which is that where you have three lawyers from the department and you have this add-on lawyer who he – I mean, the bankruptcy court says it's as if he'd done nothing. There's no evidence as to what would have changed if he hadn't been there. And that leads into the secured status of the case. The only reason we got paid is that we are fully secured, like in Le Marquis Associates. If you are a fully secured creditor in a bankruptcy context, you will get paid in full. The result of his opinion is that every time we are fully secured, we could write out the bankruptcy, do nothing, get paid in full and not be entitled to our fees. That's not what 506B says. But wasn't the bankruptcy court saying you had three lawyers in the case, you didn't need this, including a bankruptcy specialist, and you didn't need this outside lawyer who was the only attorney fee that you were seeking? I mean, why is it looking at the opinion as a whole? Particularly, that's how the district court certainly construed it. The way you're reviewing it, your interpretation of the opinion, though, goes against the language of the order itself. It specifically says, because our claim was not objected to, these fees from this application are disallowed. Absolutely. It doesn't say anything. It's only talking about the fees from the additional lawyer. I gather it was you, correct? Yes, sir, Your Honor. Exactly. Let me ask something that just reveals my ignorance, but I'm, you know, never shy to do that because this happens a lot. Okay. Why is it that only your fees are sought? Is it custom or is it the law somehow that the State of Montana doesn't get fees because it's got salaried lawyers? I mean, what's going on here? No, sir, Your Honor. It has to do with how their system was previously set up, that the internal system for the State staff attorneys were not set up to count time by hour like it's required in private practice. Because we had no ability to set up a record which the fee application was based upon, we didn't have timesheets. So the State of Montana would be entitled to get fees if it could just manage its billing practices properly? It should be, yes. So the State of Montana is throwing money away. The State of Montana is changing its practices based on new advice. I see. So it won't be throwing money away for much longer? Absolutely. It has not been throwing money away until 2005. It had no ability to get fees. And that's why this opinion is so important. But, again, can I just go back to you're saying that we can't escape the language of the order. You want to isolate on one sentence, which comes after, in a paragraph, where you had argued that the DOR was one of the main parties pushing the case, and then the bankruptcy court refers to docket events throughout the case, reviews the history of the case, and then says the court sees no evidence that Butler's services totaling this amount were reasonable or provided any change in the outcome. In the absence of any objection or challenge, this court cannot escape the conclusion. But that's a sentence in a series of sentences that reviews the facts of this case and your participation vis-a-vis everybody else that was in. So how can this be considered a per se rule for all such proceedings? Because you're looking at, when you look at the order as a whole, the memorandum as a whole, the first, the page 2 top, after you review the record in applicable law for the reasons set forth below, the DOR's application is denied on the grounds that Butler's attorney's fees are not reasonable under 506B because of the lack of any objection to allowance of the DOR's proof of claim. That is the reason the judge is here. So you're going to isolate on a sentence and ignore what you first referred to as at the end. You're going to go back to the first and say that the rest of it was compulsive. No, sir, Your Honor, because if the judge had made the substantive determination that this is not reasonable, what work was done is not reasonable, what would be reasonable would be 5,000 or 4,000 or 2,000. In order for him to get to zero and completely disallow the fee application, he is basing it on a substantive requirement that our claim be the allowance of our claim, the objected fee. Now, are you saying, are you reading this bankruptcy court opinion? Excuse me just a moment. I understand that you're not doing this at all on purpose, but the shuffling of the papers shows up on our mic show quite loudly. I can't attend, not your fault, but I just wanted to alert you, okay? Are you reading this bankruptcy judge opinion as saying no fees are allowed rather than merely the additional $13,000 in fees by the private attorney on top of the work that if they billed it properly we would have done? I mean, as I read this opinion, he understands full well that we've got attorneys working for the state of Montana who are already working the case. Yes. And he's not ruling as to whether or not they get money. Right, yes, Your Honor. Or at least, I don't think so. Are you telling me that he's saying no fees would be allowed in this case to anyone because it's oversecured and there's no objection? Yes, Your Honor, and that's the danger of the opinion. The danger of the opinion is if the trial court, if the bankruptcy judge is setting the bright line rule that a secured creditor must have its claim allowance objected to before any fees to anyone. Yes, Your Honor. I'm not sure I read it that way because we don't have in front of us anything except your fees for your work that's performed on top of the work that's already being performed by the state of Montana lawyers. Yes, Your Honor. So if we were to rewrite this and say, well, under the circumstances, this is a perfectly reasonable thing given that this is an additional lawyer, a third lawyer, a private lawyer hired by the state of Montana to assist the lawyers that are already working the case, you'd be content? It would take away the danger of the opinion. And being that it's a de novo review and being that we also address whether the actions amount to a reasonable fee, I believe you have the ability to do that in this case. But that is exactly the danger. The danger is the systematic application of these words, which we will see again. Well, I bet you will. And that's the problem. I was a government attorney for a long time before I did this. Every time you have these kind of rulings, they get seized upon by the debtor bar, and we see them on every case. There is an extrapolation problem here. So I know it sounds like I'm overstating things for $13,000, but it really is an issue. If the judge had come out and said, Mr. Butler, you were duplicative, you were useless, you weren't necessary, you weren't asking for your fees as unreasonable because somebody else did the work, we wouldn't be here today. Well, that's what I think you said. I know you – I can understand what you – That's what the district court thought he said. And I disagreed with him, too. But that's a different order of objection. That was not a systemic objection such as you're making to what you think the bankruptcy judge either wrote or perhaps had in his head. Exactly, Your Honor. Exactly. Why don't we hear from the other side and we'll give you a chance to respond. I'm sorry. I was way off. No, we took you over. When you're ready. Thank you, Your Honors. May it please the Court? My name is Darcy Crum. I'm here representing myself as the Chapter 7 bankruptcy trustee. I filed the initial objection to Mr. Butler's fee. And I believe the Montana Department of Revenue persists in its belief that the order from the bankruptcy court affirmed by the district court denied his fee because no one objected to his secured claim. I don't think the order says that. The district court did not think the bankruptcy court order said that in the 13-page opinion that we have from the bankruptcy court. I think the Department of Revenue has missed the reasonableness aspect that's present in Rule 506B altogether. I don't think Judge Kershaw was saying that whether the test is whether the secured claim has been objected to. You cannot read the reasonableness requirement out of there. And I think that that was clearly present in the hearing. I'm sorry, but I'm somewhat sympathetic to the concern here. As I read that sentence at the top of page 2, and then again the sentence just before conclusions of law, those sentences are at least susceptible to the possible reading that the bankruptcy judge is saying, listen, if we've got an over-secured creditor and there's no objection or challenge to the secured status, then you don't get fees. The fees are inherently unreasonable. How can I be confident that that's not how Judge Kershaw meant it or that the bar will interpret it? I think you can be confident of that in a couple of ways, Your Honor. First of all, other secured creditors that they paid off on the sale of this real property got their fees. There was a hearing. Mr. Butler had an opportunity to present evidence to the judge as to the reasonableness and the overall fairness of his fee. We did not hear any testimony. There is none before you in the record as to why it was necessary for the Department of Revenue to hire a fourth lawyer to substantiate or protect their secured status. And I think the court is saying it's not going to be a windfall. If you don't object to this, that's going to be one of the criteria I'm going to look at in terms of reasonableness, but I'm not going to let this rule be a windfall for over-secured creditors. You can't come in, overwork it, generate fees, and then have the debtor or other creditors end up paying for that. So I think there is not a judicially created exception like the Department of Revenue is trying to convince you to do. I think the lower court, bankruptcy court, was simply using the fact that there was not an objection as one of the factors in interpreting the reasonableness. They used that, looked at the facts. Lower court presided over all of the proceedings. I don't think it was an abuse of his discretion at all to use that as one of the tests in examining this reasonableness. He went through in detail in his opinion why these fees were not reasonable. There was no fewer than three attorneys. There were fees for conferences, at least 30 that were reflected on the bill, and there was no objection to the secured claim. Finally, one of the arguments that... If you don't mind, I'm looking at a paragraph on page 10. It's a wonderful paragraph on the page. The paragraph begins about, oh, this line is down. This court has awarded... Are you with me on page 10 of the bankruptcy judge's order? I'm with you. Okay. The court writes, This court has awarded reasonable attorneys fees under 506B to over-secured creditors. Who found it necessary to engage counsel to defend their secured status? In this case, the D.O.R. secured status as representative of the proven claim was never challenged. Although debtors listed D.O.R. in their schedules as undeclared, no objection was filed, and the D.O.R. never had to defend their status in this case until it was paid enough by the trustees. Well, that sounds as though they're saying, listen, in the absence of objection, I'm not giving you fees. How am I to respond? I want to read that paragraph. That may be coming, Your Honor, from the state statute which authorizes the Department of Revenue, 15-1-708, Montana Code Annotated, which says reasonable fees can be added to the amount of the debt. Again, we have the word reasonable in the state statute, and the judge is saying you didn't do anything to prosecute your warrant of disdain. You didn't have to foreclose. The trustee did not object to your secured status. I think it ties back to the underlying statute, which gave rise to their claim for fees in the first place. Okay. And I think that's especially true when you factor in, again, this was not part of something the department put on in evidence before the lower court. There's no proof at the hearing that they were treated differently than other secured creditors. So they make reference in their briefs to this Provident financial, which I paid off, one of the mortgage holders on the pieces of real property. But, in fact, the court in that situation did look at Provident's attorney's proof of claim, filed after I paid its secured claim in full, denied 14 of the time entries as not authorized to be paid. And in that situation, that attorney was, that creditor was represented by one attorney, not four. His attorney fee for $2,000 was six times less than what the department is claiming here. And I paid them more money than the warrants of disdain. So I think all of those factors are important in looking at the entire record in this case and not reading either the lower court or the district court's order the way the Department of Revenue is asking you to do that. Okay. Okay. I represent the debtors in this case. And I think one issue that has not been discussed particularly by the department is the underlying Montana law. I mean, under that's the genesis of the claim. And Montana has a long history of litigation regarding fee shifting. Montana law requires fees to be reasonable in order to be shifted, even if there is no statute that says it, although the statute here does say they have to be reasonable. Montana law, and it's discussed in my brief, gives extraordinary deference to the lower court. I think the actual standard under Montana law is that a decision on. But I don't think the standard we're applying here is Montana. Aren't we applying the federal standard on fees? Well, Your Honor, the 506B says that imports and makes reference to the state statute. I mean, that's the term that's in there. And in addition, the travelers insurance case from the U.S. Supreme Court clearly states that you have to first make reference to the state law. So what we've got here. I guess so, although as I read that 506B reference to the statute, it says to the extent that fees are available under the agreement or under state statute. So you're looking to see whether there's an entitlement to fees. Clearly, you look to state law for that. That's what the statute says. But I'm not sure I want to read into that the determination of reasonableness is done with the procedural aspects that we see in state court. Well, Your Honor, I guess my reading is that that's what travelers says we have to do. And then you see whether the bankruptcy law, that overlay somehow changes state law. Well, in fact, it doesn't. They both use the term reasonableness. But you're asking us to defer to a decision by the trial court here in the manner that a Montana appellate court would defer. Yes, Your Honor. That's not inherent in the definition of reasonableness. That's inherent in the definition of how we how we review a decision by the lower court. Well, yes, Your Honor, I understand that. But, again, I think I think travelers and language of 506 B. So it indicates that you shouldn't you should take the state statute. And that would include any judicial gloss that the state has put on that statute or the legal principles. OK. Although I would have to say, Your Honor, whether the state standard is arbitrary or simply the normal. I mean, we're talking here that the bankruptcy court made factual findings, including a factual finding essentially that the case has been overworked for fees. Yeah. I don't think it's going to make much difference. But I just I just smell all kinds of eerie problems. And I don't want to revisit Gasparini in terms of what the standard of appellate review is, whether we have to adopt the state standard for appellate review instead of our own. Your Honor, it is not necessary for the decision, obviously. OK. Any further questions? Thank you. And let's hear from the other side to respond. Thank you very much. Yes, Your Honor. First on reasonableness. Yes. By preemption, reasonable is defined by federal law. That came out of Ron Park. The statute says what it says. The one thing that the judge, Your Honor, pointed out, and if you read all of the purported factual recitations in the case, the court, the trial court, the bankruptcy court does state that, look, they had all these other attorneys. He found that my fee application was unreasonable. But if you look at the actions that were taken, the only actions that he focuses on are whether or not substantively us as a creditor had been objected to.  Well, you know, here's a sentence that, for good reason, you haven't really wanted to focus on. I'm on page 11, 1, 2, 3, 4, 5, 6, about eight lines up, nine lines up from the bottom. This is in the bankruptcy judge order. It begins on the left-hand margin. As the court observed, are you with me? Sure. As the court observed, DOR kept its unchallenged warrants for distraint until they were paid in full, the same as if Butler had done nothing. And that's exactly what we talked about at the beginning. And that's the danger of this opinion. What that means is that every over-secured creditor all of a sudden doesn't get fees under 506B. No. As I read that, it says the work you performed was unnecessary. No. It says exactly the same result, the same as if, quote, the same as if Butler had done nothing. But the effect, though, you have to look at the effect. In a bankruptcy context, if you get the same result as a creditor, it means you get paid in full. The only way you get paid in full as a secured creditor is being over-secured. The result that he's focusing on and being at the trial level, my impression of the trial court, the focus that he has is that our claim got paid in full as if we did nothing. In other words, if I'm over-secured, I really shouldn't do anything to stand down. That's not Ninth Circuit law. I think both the Travelers – I'm not in Travelers. In the Les Marquis, we have the ability to protect our interests.  Thank you, Your Honor. Okay. Thank both sides for their helpful arguments. At any rate, Duncan is now submitted for decision. The next case on the argument calendar is Singh v. Holder.
judges: Jones, Fletcher W. , Fisher